UNITED STATES of America, Appellee,

v.

**Mundell COOPER, Appellant.**

UNITED STATES of America, Appellee,

v.

**Lawrence WILLIAMS, Appellant.**

Nos. 85–5577(L), 85–5578.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1986.

Decided Sept. 11, 1986.

Thomas J. Curcio, Alexandria, Va., for appellant Mundell Cooper.

James C. Clark, Alexandria, Va., for appellant Lawrence Williams.

Constance Frogale, Asst. U.S. Atty. (Justin W. Williams, U.S. Atty., Alexandria, Va., on brief) for appellee.

Before ERVIN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

Mundell Cooper and Lawrence Williams appeal their convictions on assault charges, arising out of an altercation at the Lorton Reformatory in Lorton, Virginia, a Washington, D.C. facility. Cooper and Williams were inmates at Lorton. They each were convicted of assaulting Alton Johnson, another inmate, in violation of 18 U.S.C. §§ 113(a) and 2 (1982). Cooper also was convicted of assaulting Shelton Madison, a Washington, D.C. correctional officer, in violation of D.C. Code Ann. § 22–505 (1981). We conclude that defendants' incriminating statements were properly admitted because they were not due *Miranda* warnings before being questioned about the assault on Johnson. We also conclude that their other assignments of error are meritless. Therefore, we affirm.

I.

The incident which gave rise to this case occurred one evening near the visitors' area of the prison. Ostensibly preparing for visitation, defendants and inmate Johnson arrived in the visitors' area. The correctional officer on duty, Jerome Jones, testified that he discovered defendant Williams stabbing Johnson. The correctional officer told Williams to stop the assault. In response, defendant Williams allegedly stated: "Not yet, I am not finished." Contemporaneously, defendant Cooper joined Williams in the assault on Johnson.

Government witnesses also testified that two additional correctional officers appeared on the scene and the fight was broken up. Defendants fled, dropping knife-like weapons. One of the officers, Shelton Madison, pursued the defendants. During this chase, defendant Cooper allegedly confronted Madison with a knife-like weapon and threatened him verbally. Defendants were not apprehended immediately, becoming lost in a crowd of prisoners. However, they were identified later by the correctional officers and charged.

After this incident but before trial, Adrienne Poteat, a Correctional Treatment Specialist, visited inmates near defendants' cells. Although she had not intended to visit defendants, they asked to speak with her. Defendants were moved from their cells to a "disciplinary board room" to facilitate this conversation.

Once in the board room, Poteat asked defendants why they had committed the assault. In response, defendant Cooper allegedly made incriminating statements. Defendant Williams allegedly was nodding in agreement during Cooper's statements.

At trial, defendants admitted their involvement in the altercation, but denied instigating it. Furthermore, they alleged that inmate Johnson initiated the assault and that no guards were present. They also denied making incriminating statements to Correctional Treatment Specialist Poteat.

Defendants appeal their convictions on the following grounds: (1) the district court erred in admitting defendants' incriminating statements made during the conversation in the board room with Poteat because Poteat's question was not preceded by *Miranda* warnings; (2) there was insufficient evidence of assault on Officer Madison by Cooper; (3) the district court erred in admitting defendant Williams' incriminating statement made to Officer Jones at the scene because the statement was not disclosed pursuant to defendants' discovery request; and (4) the district court erred in not granting defendants' motion for judgment of acquittal.

## II.

■ Before trial, defendants moved to suppress the testimony of Correctional Treatment Specialist Poteat regarding her conversation with defendants in a disciplinary board room. The motion to suppress was denied by the district court. Defendants appeal that ruling and assert reversible error on the ground that they were not given *Miranda* warnings before Poteat questioned them.

*Miranda* warnings must precede "custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The *Miranda* rule was held applicable in the prison context in *Mathis v. United States,* 391 U.S. 1, 4, 88 S.Ct. 1503, 1504, 20 L.Ed.2d 381 (1968). In *United States v. Conley,* 779 F.2d 970, 972 (4th Cir.1985), however, we "decline[d] to read *Mathis* as compelling the use of *Miranda* warnings prior to all prisoner inter-

rogations and [held] that a prison inmate is not automatically always in 'custody' within the meaning of *Miranda."* Instead, the court recognized that "custody" or "restriction" in the prison context " 'necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement.' " *Conley,* 779 F.2d at 973 (quoting *Cervantes v. Walker,* 589 F.2d 424, 428 (9th Cir.1978) ). *See also Flittie v. Solem,* 751 F.2d 967, 974 (8th Cir.1985); *United States v. Scalf,* 725 F.2d 1272, 1275–76 (10th Cir.1984). Thus, whether an inmate is "in custody" under *Miranda* depends on the circumstances of the case.

*Conley* was deemed not in custody for purposes of *Miranda.* Like Conley, defendants here were taken to a "conference area ... not for the purpose of interrogation" but "primarily" for another reason. *Conley,* 779 F.2d at 973. Specifically, they were taken to a disciplinary board room to converse with a correctional treatment specialist at their request. Thus, defendants were moved from their cell to an inherently less restrictive area. Furthermore, there was testimony that one of two doors to the room remained unlocked. Although Conley was questioned by correctional officers or guards, defendants were questioned by a correctional treatment specialist, an arguably less intimidating prison representative. Finally, it is significant that defendants were not handcuffed; "Conley wore handcuffs and, at some points, full restraints." *Conley,* 779 F.2d at 973. Overall, we conclude that defendants did not experience "an added imposition on [their] freedom of movement," *Conley,* 779 F.2d at 973, and thus, were not "in custody."[1] Indeed, under the circumstances of this case, their restriction was diminished at the time of the conversation with Poteat. Furthermore, by comparison, defendants stand in an even less persuasive posture than Conley for compelling a conclusion that they were "in custody."

---

1. Under *Miranda's* "custodial interrogation" test, the government argues that defendants were neither "in custody" nor the subject of "interrogation." For purposes of this opinion, we as- sume without deciding that defendants were interrogated. However, because we conclude that they were not "in custody," they were not under "custodial interrogation."

Defendants attempt to distinguish themselves from Conley by arguing that Conley was the subject of "on-the-scene" interrogation, but defendants were not.[2] In *Miranda*, the Supreme Court noted that: "Our decision is not intended to hamper the traditional function of police officers in investigating crime.... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." 384 U.S. at 477, 86 S.Ct. at 1629. Thus, on-the-scene questioning does not require *Miranda* warnings. *Cervantes*, 589 F.2d at 427. If the questioning is not on the scene but occurs subsequently, then as already stated, whether *Miranda* warnings are due depends on whether the person interrogated was the subject of "custodial interrogation."

In *Conley*, we followed the Ninth Circuit's decision in *Cervantes v. Walker, supra.* The *Cervantes* court found that the inmate defendant was not due *Miranda* warnings because he was not subjected to custodial interrogation. The court also noted that Cervantes' interrogation "was an instance of on-the-scene questioning," 589 F.2d at 429, and reserved the question of the applicability of *Miranda* warnings in cases which "present an instance of questioning about prison crime which does not immediately follow its discovery." *Id.* at n. 6.

Like Cervantes, Conley also was arguably the subject of on-the-scene questioning; he was questioned shortly after the crime occurred. In contrast, defendants were questioned by Poteat ten days after the assault. Thus, this case is arguably factually distinguishable from *Cervantes* and *Conley*. On that basis, defendants assert that our rule in *Conley* is not applicable. The distinction advanced by defend-

ants, however, is without significance under the circumstances of this case.

It is true that if a defendant is not questioned on the scene, then we must consider whether he was the subject of custodial interrogation. That is, we cannot dispense with *Miranda* warnings in such a case on the basis that the defendant was questioned on the scene. However, regardless of whether Conley was questioned on the scene, we proceeded to consider whether he was in custody under *Miranda* and found that he was not. *See Conley*, 779 F.2d at 973. Likewise, we have determined that defendants were not "in custody," and thus, not under "custodial interrogation." Therefore, *Miranda* warnings were not warranted. Accordingly, it makes no difference in the result of this case that defendants were not questioned on the scene. That circumstance only affects the focus of our inquiry, not our conclusion. We hold, therefore, that the district court properly denied defendants' motion to suppress the incriminating statements made to Poteat.

### III.

■ Defendants raise three additional issues on appeal. First, defendant Cooper argues that there was insufficient evidence to sustain his conviction for assaulting Correctional Officer Madison. Specifically, he argues that the evidence was insufficient to prove (i) that Cooper knew or should have known that Madison was a correctional officer, and (ii) that Cooper possessed the apparent present ability to accomplish his threat toward Madison—both of which are requirements of the Washington, D.C. statute under which Cooper was convicted. We have reviewed the record and find that there was substantial evidence that Cooper and Madison were familiar with one another, tending to prove that Cooper knew or should have known Madison's official iden-

---

**2.** Defendants also attempt to distinguish themselves from Conley by arguing that defendants were questioned as suspects, while Conley was questioned as a witness. In *Conley*, we noted that the officers "testified that they questioned him as a witness to, rather than a suspect in, the ... murder." 779 F.2d at 974. However, the

facts of the case clearly reveal that Conley was removed from his cell not only for medical treatment but also for questioning as a suspect. While being questioned, he attempted to exonerate himself by claiming that he was merely a witness to the murder. *See id.* at 971.

tity. Also, there was evidence that Cooper wielded a twelve to fifteen-inch knife-like weapon at the time of the assault, tending to prove Cooper's ability to make good his threat. Overall, there was more than sufficient evidence to sustain the conviction.

■ Second, defendant Williams argues that the district court erred in admitting his incriminating statement made at the scene in response to Officer Jones' command that Williams stop the assault. Williams stated: "Not yet, I'm not finished." Because this statement was not divulged before trial pursuant to defendants' discovery request under Fed.R.Crim.P. 16(a)(1)(A), Williams asserts that it was reversible error to admit it into evidence. For an oral statement to be within the purview of Rule 16(a)(1)(A), it must be made "in response to interrogation." *See United States v. Jackson,* 757 F.2d 1486, 1491 (4th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985); 8 J. Moore, *Moore's Federal Practice,* ¶ 16.05[1], at 16–72 to –74 (1986). Williams' statement does not meet this requirement. Thus, it is not covered by the rule and the government was not required to disclose it before trial. Accordingly, the district court did not err in admitting the statement.

Third, defendants argue that "the inconsistencies in the government's case were such as to render it inherently incredible and insufficient to sustain a conviction." Therefore, urge defendants, the district court erred in denying their motion for judgment of acquittal. We have reviewed the record and conclude that the evidence was more than sufficient for a rational jury to find defendants guilty beyond a reasonable doubt. *See United States v. Tresvant,* 677 F.2d 1018, 1021 (4th Cir.1982).

AFFIRMED.