948 F.2d 1290
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Angelia CUMMINGS, Defendant-Appellant.
 No. 91-1102.
 United States Court of Appeals, Sixth Circuit.
 Nov. 19, 1991.
 
 Before BOGGS, Circuit Judge, BAILEY BROWN, Senior Circuit Judge, and GIBBONS, District Judge.*
 PER CURIAM:
 
 
 1
 Appellant Angelia Cummings was convicted of aiding and abetting her husband in dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. 12. On appeal she challenges the conviction on several grounds Cummings claims that (1) the trial court erred in refusing to ask a particular question during the voir dire examination; (2) the trial court erred in refusing to excuse a prospective juror for cause; (3) the trial court erroneously admitted evidence; (4) the trial court erroneously denied appellant's motion for judgment acquittal; and (5) the trial court erred in its jury instructions.
 
 
 2
 Much evidence was presented at trial connecting Cummings with her husband's unlicensed sale of firearms. In April 1989, a federal agent observed Cummings and her husband place firearms in a van at their home. In May 1989, government informant Lacy Brown saw Cummings show firearms to potential customers at a gun show. During subsequent taped conversations with Brown, Cummings advised Brown when her husband received new guns, told him the type of guns received and that her husband had friends who could arrange to get other guns for him, informed him when her husband received one or more guns ordered by Brown, discussed arrangements for a meeting between Brown and her husband and assured Brown that he would be receiving the guns at a good price.
 
 
 3
 Cummings was present for the final transaction with undercover operatives on August 17, 1989. During this transaction, which involved over $6,000.00, Cummings' husband met the undercover operatives at a location different from the place where Cummings waited with the guns. The operatives then went to meet Cummings, who was sitting in a Chevette filled with forty-nine guns stacked above window level and covered with a blanket. After some conversation, Cummings gave the car keys to her husband, who intended to transfer the car with the guns to the gun purchaser. Following the arrest of Cummings and her husband, a search of their home pursuant to a search warrant resulted in the seizure of additional firearms.
 
 
 4
 First, Cummings argues that the trial court abused its discretion by refusing to ask prospective jurors how they felt about guns, as Cummings had requested. Cummings argues that the responses to this question could have afforded the basis for a challenge for cause.
 
 
 5
 Trial courts enjoy considerable discretion in determining the questions to be asked in voir dire. United States v. Fish, 928 F.2d 185, 186 (6th Cir.1991). Judges need not ask every proposed voir dire question submitted by counsel. Id. In Fish, this court specifically held that the trial court may properly refuse to inquire about prospective jurors' "general attitudes" towards firearms because "inquiring into a juror's attitude toward conduct that is criminalized would not assist in selecting an impartial jury." Id.
 
 
 6
 In this case, the following exchange occurred between the trial court and prospective jurors:
 
 
 7
 COURT: I think this has been basically covered, but I'll ask you again. This case involves firearms, as I've indicated to you. Do any of you feel that because the case involves firearms and because of any feelings you might have about firearms, that would cause some difficulty for you in being a fair and impartial juror in this case?
 
 JURORS: (no audible response)
 
 8
 COURT: In other words, would--would your knowledge that Ms. Cummings' husband was involved in the unlawful sale of firearms prevent you from returning a verdict of not guilty in favor of the Defendant, if you have reasonable doubt as to whether she committed the offense?
 
 JURORS: (no audible response)
 
 9
 These questions were sufficient to elicit information regarding views on firearms that could serve as the basis for challenge. Furthermore, the court inquired into general prejudices, whether or not the jurors were members of any fraternities or clubs, burden of proof, presumption of innocence and proof beyond a reasonable doubt. The voir dire proceedings were thorough and the trial court did not err in refusing to ask Cummings' requested question.
 
 
 10
 Cummings also argues that the trial court erred when it refused to excuse a potential juror for cause. The prospective juror indicated during voir dire that, although she would try to be fair and impartial, she just was not sure that she could.[1] At a bench conference, defense counsel requested that the juror be excused for cause. When the trial court refused, defense counsel used a peremptory challenge to excuse the juror. Cummings argues that the court erred in refusing to excuse the juror for cause, thus, forcing her to use a peremptory challenge and unfairly reducing the number of peremptory challenges available.[2]
 
 
 11
 Decisions regarding whether to strike a potential juror for cause are reviewed under an abuse of discretion standard. United States v. Giacalone, 588 F.2d 1158, 1163 (6th Cir.1978). Here the trial court did abuse its discretion by failing to dismiss the juror for cause. While every doubt expressed by a juror about the ability to be fair and impartial does not require an excuse for cause, here the colloquy ended with the juror's expressing a real, substantial doubt, based on her own life experiences, that she could be fair. Under these circumstances, a proper exercise of discretion required her excuse.
 
 
 12
 Cummings argues that the failure to excuse the juror for cause violated her Sixth Amendment right to a fair and impartial jury under the United States Constitution,[3] and that reversal of her conviction is required. The court disagrees.
 
 
 13
 The error in failing to excuse the juror is not grounds for reversal. In Ross v. Oklahoma, 487 U.S. 81 (1988), the United States Supreme Court held that a state trial court's error in failing to remove a juror for cause was not grounds for reversal where the juror was removed by a peremptory challenge.
 
 
 14
 In Ross, the defense used all nine of its challenges allowed under state law, though it did not challenge for cause any of the twelve jurors who actually heard the case. Id. at 84. Though the trial court's failure was an error, the Court found that such failure did not abridge petitioner's Sixth and Fourteenth Amendment right to an impartial jury, since the juror did not sit on the jury that sentenced the petitioner. The peremptory challenge removed the juror "as effectively as if the trial court had excused him for cause." Id. at 86.
 
 
 15
 The Ross Court rejected the very argument made by Cummings. Cummings argues that she was forced to "waste" a peremptory challenge because of the trial court's error. The court, however, specifically rejected "the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." Id. at 88. "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." Id.
 
 
 16
 Although Ross is a state habeas case, the Court was considering the same federal constitutional issue presented here. Since the juror in question was removed by peremptory challenge, and Cummings has made no showing that the jury that actually served was anything other than fair and impartial, there is no constitutional violation. Cummings received a trial by a fair and impartial jury.
 
 
 17
 Next Cummings argues that the trial court abused its discretion in admitting the hearsay testimony of government witness Lacy Brown regarding his conversations with Cummings' husband. Cummings failed to object to most of Brown's testimony regarding her husband's statements, and, as to those portions of the testimony, the conviction can be reversed only for plain error. See United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir.1990); United States v. Segal, 852 F.2d 1152, 1156 (9th Cir.1988); United States v. Wood, 780 F.2d 555, 559 n. 5 (6th Cir.), cert. denied, 475 U.S. 1111 (1986); United States v. Vannerson, 786 F.2d 221, 225 n. 5 (6th Cir.), cert. denied, 476 U.S. 1123 (1986).
 
 
 18
 A review of the testimony of statements to which Cummings' counsel did not object does not disclose any plain error by the trial court. Those parts of the testimony were merely cumulative due to Cummings' stipulation that her husband was in the unlicensed business of selling firearms.
 
 
 19
 The only evidence of the husband's statements to which Cummings objected in the trial court was Brown's testimony that the husband falsely represented that a gun which he wanted to sell was an automatic.[4] Cummings objected on hearsay grounds. The trial court ruled that the statement was admissible because it was not offered for the truth of the matter asserted. Any error in admitting this testimony was purely harmless. The husband's culpability was stipulated, and whether he was truthful in his statements to Brown could have had no conceivable impact on the trial. Also, Cummings' argument that admission of the testimony violates her Sixth Amendment confrontation right is without merit. Accordingly, the trial court's evidentiary rulings regarding Brown's testimony do not constitute reversible error.
 
 
 20
 Cummings also argues that the trial court abused its discretion by erroneously admitting statements Cummings made about the case when she telephoned an agent of the Bureau of Alcohol, Tobacco and Firearms. After the execution of a search warrant at her home, Cummings telephoned the ATF agent and asked about the legality of selling a gun that agents had left behind. The agent testified that Cummings indicated that she and her husband wanted to sell the gun, since they made their living by selling guns. The agent did not write a summary of Cummings' telephone remarks, although the case agent asked him to do so. Cummings argues that admission of her statement violated Fed.R.Crim.P. 16.
 
 Rule 16(a)(1)(A) provides that
 
 21
 Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent ..."
 
 
 22
 This court has held that defendants are not entitled to receive spontaneous, unsolicited statements or admissions as part of Rule 16 discovery. United States v. Green, 548 F.2d 1261, 1266-67 (6th Cir.1977) (spontaneous unsolicited admissions made within hearing of an undercover police officer not discoverable under Rule 16(a)(1)(A)). See also United States v. Cooper, 800 F.2d 412, 416 (4th Cir.1986); United States v. Payden, 613 F.Supp. 800, 820 (S.D.N.Y.1985). Since Cummings' statement was made during a phone call which she initiated and was not solicited or made in response to interrogation, it is not discoverable under Rule 16(a)(1)(A). Accordingly, the trial court did not err in admitting the statement.
 
 
 23
 Cummings also challenges the sufficiency of the evidence to support the conviction of aiding and abetting. Cummings argues that the court erred in denying her motion for judgment of acquittal because there was no evidence admitted in the government's case-in-chief that she possessed the specific intent to aid in the commission of the offense. Cummings argues that, to prove specific intent, the government had to show that she was aware that her husband was unlicensed and that the government failed to present sufficient evidence of such knowledge.
 
 
 24
 In considering a sufficiency of the evidence challenge after a jury conviction, the record should be viewed in the light most favorable to the government. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982). Viewing the record in the light most favorable to the government, sufficient evidence was presented at trial from which the jury could infer that Cummings had knowledge that her husband was not licensed to sell firearms.
 
 
 25
 The parties stipulated at trial that Cummings' husband was in fact not licensed to sell firearms. The covert nature of the firearm transaction that preceded Cummings' arrest could allow a juror to infer that Cummings knew her husband was doing something illegal, i.e., he was not licensed to sell guns. During this transaction, Cummings' husband met the undercover agents somewhere other than where Cummings waited. Cummings had the guns in the back of a vehicle covered with a blanket. Later, Cummings' husband brought the agents to the location where Cummings was waiting with the covered guns. Moreover, the evidence, viewed most favorably to the government, shows extensive involvement by Cummings in her husband's business activities. Cummings was aware of pertinent aspects of the day-to-day operation of the business and had substantial responsibility for it. The evidence plainly creates a jury question regarding Cummings' knowledge of her husband's license status. All the evidence presented at trial supports a finding that Cummings aided and abetted her husband in the unlicensed sale of firearms. The trial court did not err in submitting the case to the jury and denying Cummings' motion for judgment of acquittal.
 
 
 26
 Finally, Cummings argues that the trial court erred in its jury instructions regarding the elements of the offense. She claims that the jury instructions were erroneous because the trial court failed to instruct the jury, pursuant to her proposed instruction, that the jury had to find that Cummings knew her husband did not have a license to sell firearms in order to convict her of aiding and abetting. This argument is without merit.
 
 
 27
 The jury instructions were, in fact, substantively equivalent to those sought by Cummings. The district judge instructed the jury that
 
 
 28
 The elements of aiding and abetting ... which must be proven beyond a reasonable doubt, are as follows: First, the Defendant knew the criminal act, that is to say, the dealing in firearms without a license, was occurring; second, that she associated herself with the act; third, she participated in it as something she wished to bring about; and four, she committed some overt act to make it a success. An overt act is an act done with the intention of making the criminal act a success.
 
 
 29
 Now, mere presence at the scene of the crime, and knowledge that a crime is being committed, are not sufficient to establish that the Defendant aided and abetted the crime, unless you find beyond reasonable doubt that Defendant was a participant, and not merely a knowing spectator.
 
 
 30
 Clearly, the trial court's instructions conveyed to the jury that Cummings had to know her husband was dealing in firearms without a license. Accordingly, the trial court did not err in its jury instructions.
 
 
 31
 Appellant Angelia Cummings' conviction is AFFIRMED.
 
 
 
 *
 The Honorable Julia Smith Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The applicable portion of the voir dire was as follows:
 COURT: Well, you know that it's the duty of the jurors, do you not, to decide cases such as the one here strictly on the evidence here in the courtroom?
 JUROR: Yes.
 COURT: You do understand that, don't you?
 JUROR: Yes.
 COURT: And that's vitally important to our whole system justice. You do--you're aware of that. Are you not?
 JUROR: (indiscernible)
 COURT: Do you think that you could despite the fact of this trial incident at school, despite the fact that your husband is a police officer, do you think that you could hear this case and listen to the evidence and then decide this case strictly on the evidence presented here, not on any preconceived notion, or any outside factor. And then decide this case fairly and impartially, without any bias or prejudice?
 JUROR: I would try very hard to but I'm not sure that I could.
 COURT: You're not sure that you could?
 JUROR: No.
 COURT: All right. But you would make every effort to be fair and impartial, would you not?
 JUROR: Yes, I would.
 COURT: Okay. All right. You can be seated.
 T.R. at 90-91.
 
 
 [2]
 Although Cummings did not exercise her last peremptory challenge on the juror, she ultimately did exhaust her peremptory challenges
 
 
 [3]
 Cummings' brief refers to a violation by the trial court of her Fifth Amendment due process rights and a violation of Rule 24(b) of the Federal Rules of Criminal Procedure in the title of the section of the brief discussing both the refusal to ask a voir dire question proposed by Cummings and the failure to excuse the juror for cause. In the body of the brief, however, the discussion of the failure to excuse the juror for cause refers only to a claimed constitutional deprivation of the Sixth Amendment right to a fair and impartial jury. The court therefore assumes that Cummings asserts no issue of a due process deprivation or violation of F.R.Crim.P. 24(b) in connection with the failure to excuse the prospective juror for cause. In any event, the failure to excuse a juror for cause, when a fair and impartial jury was ultimately selected and when Cummings received all peremptory challenges to which she was entitled under Rule 24(b), did not violate any other constitutional rights of Cummings or Rule 24(b)
 
 
 [4]
 Defense counsel objected on one other occasion to Brown's testimony on hearsay grounds, but the government abandoned the effort to introduce this testimony. T.R. at 60-61