# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH 1999 SESSION

**FILED**

September 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. #01C01-9804-CR-00168 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Honorable Cheryl Blackburn, Judge |
| **EARL JUNIOR PIKE,** | * | (Aggravated Sexual Battery--Rape of a Child) |
| Appellant. | * | |

FOR THE APPELLANT:

KARL DEAN
District Public Defender

JEFFREY A. DEVASHER (on appeal)
J. MICHAEL ENGLE (at trial)
Assistant Public Defenders
1202 Stahlman Building
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MARVIN E. CLEMENTS, JR.
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

VICTOR S. (TORRY) JOHNSON III
District Attorney General

DIANE SPROW LANCE
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN 37201-1649

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Earl Junior Pike, was tried by a jury and convicted of aggravated sexual battery and rape of a child. The trial court sentenced him to twelve years on the aggravated sexual battery (count one) and to twenty-five years for rape of child (count two), to be served consecutively. The defendant challenges both his convictions and sentences, presenting the following issues:

(1)  whether the trial court erred in overruling his motion to suppress certain incriminating statements;
(2)  whether the trial court erred in overruling his motion to dismiss due to pre-accusatorial delay;
(3)  whether the trial court erroneously instructed the jury on the definition of cunnilingus;
(4)  whether, as to count two, the evidence was sufficient for a reasonable trier of fact to find that the defendant committed the offense;
(5)  whether the sentences imposed by the trial court are excessive; and
(6)  whether the trial court erred in ordering consecutive service.

Finding no error, we AFFIRM the judgment of the trial court.

## BACKGROUND

In the light most favorable to the state, the evidence showed that, while babysitting the victim, the defendant "kissed" or "licked" the victim's vagina twice on consecutive days shortly before September 3, 1993. The victim was born on September 18, 1983, making her nine years of age at the time of the offense. The victim identified the defendant at trial and testified that, on the first occasion, he entered his son's room where she was lying on the bed, pulled her shorts aside, and licked her vagina (count two). Her testimony indicated that he repeated substantially similar actions the following day (count one).

Following a complaint from the victim's family, Detective David Imhof began investigating the defendant in June, 1996. Imhof first attempted to contact the defendant by visiting his home on September 25, 1996. The

defendant was not home so Imhof left his card. The defendant called Imhof back that same day and agreed to meet at Imhof's office for an interview on September 30. After failing to attend that interview, the defendant called Imhof and said he had spoken with a lawyer, Joan Lawson. He stated that Lawson had told him that it was "probably not in his best interest to talk with [Imhof]."

Imhof called Lawson, and she advised him that the defendant was a past client but that she did not represent him at that time. She stated that she had told the defendant that this matter was different from his requirement to cooperate with his community corrections officer and that he did not have to talk with police or take a polygraph test. She also told the defendant that anything he did say to Imhof could be used against him.

Imhof next spoke to the defendant on October 29, 1996. On that date, Imhof went to the defendant's residence, introduced himself as a police detective, and asked if the defendant would be willing to talk in Imhof's car. The defendant agreed, and Imhof advised him of his Miranda rights. The defendant verified that he understood his rights and signed a waiver. Imhof then questioned the defendant about the current case, and the defendant denied any criminal conduct.

Imhof next contacted the defendant on November 25, 1996, via telephone. He asked the defendant if he would be willing to take a polygraph, and the defendant agreed to do so. The following morning, the defendant voluntarily went to Imhof's office for the test. When he arrived, Imhof did not re-advise the defendant of his Miranda rights. He did, however, read him a consent form for the polygraph test and emphasized that the test was completely voluntary. The defendant stated that he understood and signed the form. During the polygraph, the defendant made several incriminating statements, including admissions that he had put his hand in the victim's shorts and touched

her vagina and that he had kissed her on the vagina on two separate occasions. He also affirmed that he was sexually excited by children.

After the polygraph, Imhof asked the defendant if he would come to his office to discuss the results. Imhof again explained to the defendant that he was not under arrest, that he did not have to talk to police, and that he was free to leave at any time. He also showed the defendant how to operate the door if he wanted to leave. Nevertheless, the defendant agreed to be interviewed further. At that time, the defendant again admitted first touching, and then licking, the victim's vagina on two separate occasions while babysitting the victim.

Earlier in his investigation, Imhof had learned that the defendant was serving a community corrections sentence and, as part of this sentence, was required to attend sex-offender counseling. Steve Rhodes was the defendant's community corrections supervisor, and Dr. John Brogden conducted the defendant's sex-offenders' group. On November 26, 1996, Imhof told Rhodes that the defendant had confessed to sexually abusing the victim of this case. Thus, Rhodes knew of the defendant's admissions at the time of the defendant's next regularly scheduled office visit. Rhodes did not, however, initiate a discussion of the events. Nonetheless, during his next scheduled office visit with Rhodes, the defendant spontaneously told Rhodes and Brogden, who was also present, that he had sexually molested a person named "AR."[1] The defendant stated that "AR" had come out of the bathroom naked and that he "ran [his] hands on her." He said that later that day, he took her pants off and "kissed it."

Dr. Brogden testified that, in late November 1996, the defendant came to his office and stated that he had just confessed to the police regarding the

---

[1] Although the state seems to presume that the defendant was referring to the victim of the present offense, it is not entirely clear that he was. The victim of the present offense-"AB" and "AR" share the same first name. However, the record reflects that "AR" is the defendant's niece. It is the policy of this Court not to name victims of sexual offenses.

crimes in this case. The defendant subsequently made similar statements during group therapy.

The defendant was indicted on February 8, 1997 and arrested on March 10, 1997. He filed a pretrial motion to suppress his statements to Imhof, Rhodes, and Brogden, arguing that these statements were taken in violation of his rights against self-incrimination and to counsel. The trial court denied this motion, finding that the defendant had not been in custody at the time of any of his statements, and the statements were admitted into evidence.

**ANALYSIS**

*SUPPRESSION*

The defendant first argues that the trial court erred in failing to suppress his statements to Imhof, Rhodes, and Brogden. He asserts that each statement was taken while in custody, without the benefit of Miranda warnings, and that police improperly reinitiated contact with him after he had invoked his rights to remain silent and to counsel. As to his statements to Rhodes and Brogden, the defendant further argues that these statements should have been suppressed as "fruit" of his statement to Imhof.

When a defendant challenges a suppression ruling, this Court reviews for error under the following standard. The findings of fact made by the trial court on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against these findings. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). The trial court, as trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolves any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 223 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The defendant has the burden of establishing that the evidence contained in the

record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

Following this standard, we first examine the defendant's contested statement to Imhof made on November 26, 1996, and find that it was not obtained while defendant was in custody. The Court notes that defendant on his own voluntarily went to the police station, that neither defendant's freedom nor movement was restricted, and that defendant was informed he was not under arrest, was free to leave, and was free to discontinue the questioning at any time. Accordingly, we conclude that the setting was noncustodial and did not implicate the concerns or trigger the protections of Miranda. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Next, we examine the defendant's statements on December 2, 1996. The defendant argues this statement was obtained in violation of Miranda, as it was "custodial" in so far as defendant was serving a Community Corrections sentence at the time and was required thereby to attend meetings with his Community Corrections officer and to attend group therapy. Unpersuaded by this argument, this Court first notes that the statement was made not in response to questioning or prompting but rather offered voluntarily and spontaneously by defendant. Such voluntary statements are admissible in evidence whether or not Miranda warnings are given first. State v. Brown, 664 S.W.2d 318, 320 (Tenn. Crim. App. 1984). Second, this court cannot conclude that the Community Corrections setting at issue here was custodial. The Court of Criminal Appeals has noted in a somewhat different context that Community Corrections is noncustodial in nature. Bentley v. State, 938 S.W.2d 706, 710 (Tenn. Crim. App. 1996). Defendant's arguments against this characterization are not compelling. Further, we add that in defendant's case no additional imposition was placed upon defendant's freedom. See State v. Robert Goss and Carl Hale, Lauderdale County, C.C.A. No. 02C01-9610-CC-00367 (Tenn. Crim. App., filed November

10, 1998, at Jackson) slip op. at pp. 21-23, citing United States v. Conley, 779 F.2d 970, 972-973 (4th Cir. 1985); United States v. Cooper, 800 F.2d 412, 414-415 (4th Cir. 1986); Cervantes v. Walker, 589 F.2d 424, 427-429 (9th Cir. 1978). Defendant was not forcibly summoned to the meeting, the defendant was not confronted with any evidence of his guilt, and no extra pressure was exerted to detain defendant. Therefore, defendant's claim that his statements must be suppressed is denied.

As we have upheld the admissibility of the earlier statement of November 26, 1996, we reject defendant's further argument that his statements of December 2, 1996, are in any way tainted and subject to suppression.

Finally, as we have found that defendant was not in custody on either November 26, 1996, or December 2, 1996, we reject defendant's claim that any of these statements were the result of impermissible re-initiation during continuous custody. See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880 (1981); State v. Furlough, 797 S.W.2d 631 (Tenn. Crim. App. 1990).

## PRE-ACCUSATORIAL DELAY

The defendant next argues that the trial court erred in overruling his motion to dismiss due to the state's delay in bringing proceedings against him. The leading Tennessee case on pre-accusatorial delay is State v. Gray, 917 S.W.2d 668 (Tenn. 1996). There the Tennessee Supreme Court stated,

> Today we articulate a standard by which to evaluate pre-accusatorial delay and hold that an untimely prosecution may be subject to dismissal upon Fifth and Fourteenth Amendment due process grounds and under Article I, §§ 8 and 9, of the Tennessee Constitution even though in the interim the defendant was neither formally accused, restrained, nor incarcerated for the offense. In determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused. See [United States v.] Lovasco, 431 U.S. at 790, 97 S.Ct. at 2048-49 ("proof of prejudice is generally a necessary but not sufficient element of a due process claim, . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused").

-7-

<u>Gray</u>, 917 S.W.2d at 673. The <u>Gray</u> Court also recognized, however, that a statute of limitations is the primary safeguard against infringement of a defendant's due process rights resulting from long delays. <u>See</u> <u>id.</u> at 672 <u>citing</u> <u>United States v. Marion</u>, 404 U.S. 307, 321-23 (1971).

In <u>Gray</u>, there was no period of limitation applicable to the charged offense, and the defendant's alleged offense had occurred some forty-two years prior to indictment. In contrast, the defendant in the present case is protected by a fifteen-year statute of limitations. <u>See</u> Tenn. Code Ann. § 40-2-101(b)(1). We agree with the trial court that the approximately three-year delay between the defendant's offense and indictment was not excessive under the circumstances of this case. Moreover, the defendant had not established any prejudice from this delay. The trial court found that the pertinent witnesses were still available and that the defendant had a strong recollection of the events that formed the basis of the charges against him. Thus, we find no error in the trial court's decision denying the defendant's motion to dismiss for pre-accusatorial delay.

## *JURY INSTRUCTIONS*

The defendant next challenges the trial court's instruction to the jury on the definition of cunnilingus. The trial court instructed the jury that "Cunnilingus means a sex act accomplished by placing the mouth or tongue <u>on or in</u> the vagina of another." (emphasis added) <u>quoting</u> T.P.I. -Crim. § 10.12 (4th Ed. 1995). The defendant recognizes that this Court has upheld a definition of cunnilingus nearly identical to the one in this case. <u>See</u> <u>State v. Hoyt</u>, 928 S.W.2d 935, 942 (Tenn. Crim. App. 1995). Nonetheless the defendant argues that this definition is inappropriate here because, by failing to require penetration, the court's definition of cunnilingus did not distinguish the acts supporting each of the defendant's offenses. We do not find this troubling. The same act may often support multiple offenses. The instruction given is a correct statement of the law and was sufficient to inform the jury. Thus, we find no error.

## *SUFFICIENCY OF EVIDENCE*

Next, the defendant submits that the evidence is insufficient to support the jury's verdict as to count one, rape of a child. When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The appellant is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1983). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by defendants at trial and replaces it with a presumption of guilt. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

Section 39-13-522 of Tennessee Code Annotated provides, "rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen years of age." The Code further defines "sexual penetration" to mean, "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any

object into the genital or anal opening of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7) (emphasis added).

The defendant argues that he could not be convicted of rape of a child because that offense requires sexual penetration and no evidence suggests that he penetrated the victim with his mouth or tongue. As noted above, however, sexual penetration includes cunnilingus. See Tenn. Code Ann. § 39-13-501(7). The victim testified, and the defendant admitted in his statements to Imhof, Rhodes, and Brogden, that he "licked and kissed the victim's vagina." Thus, the evidence is clearly sufficient to establish that the defendant performed cunnilingus on the victim, as that term was defined for the jury from the Tennessee Pattern Jury Instructions.

Here again, the defendant objects to the trial court's definition of cunnilingus, again asserting that by failing to require actual oral penetration, the offenses of rape by cunnilingus and aggravated sexual battery by cunnilingus could not be distinguished. For the reasons stated above, we do not find this problematic.

**SENTENCING**

Finally, the defendant asserts that his sentence is excessive and that consecutive service was not warranted. When an accused challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record, "with a presumption of the determinations made by the trial court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The appellant carries the burden of showing that his sentence is

improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n cmts; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

*LENGTH OF SENTENCE*

The defendant is a Range I offender. Rape of a child is a Class A felony, see Tenn. Code Ann. § 39-13-522(b), and aggravated sexual battery is a Class B felony, see Tenn. Code Ann. § 39-13-504(b). Thus, the defendant is subject to sentencing ranges of fifteen to twenty-five years and eight to twelve years respectively. See Tenn. Code Ann. § 40-35-112(a)(1), (2). The trial court found mitigating factor (13), see Tenn. Code Ann. § 40-35-113(13), and enhancement factors (1), (8), (13), and (15)[2] applicable to both of the defendant's offenses. As to count two only, the trial court also found enhancement factor (7) applicable. See Tenn. Code Ann. § 40-35-114(7) ("The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement."). Based on these findings, the trial court imposed maximum sentences on both counts.

The defendant argues that these sentences are excessive. When an accused challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record, "with a presumption of the determinations made by the trial court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby,

---

[2]

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . . .
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
> . . . .
> (13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction: . . . (B) Bail, if the defendant is openly convicted of such prior felony;
> . . . .
> (15) The defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense.

Tenn. Code Ann. § 40-35-114 (1), (8), (13), (15).

-11-

823 S.W.2d 166, 169 (Tenn. 1991). The appellant carries the burden of showing that his sentence is improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n cmts; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

Of the enhancements found by the trial court, the defendant challenges the applicability of only factor (7). He argues, however, that the trial court additionally erred failing to apply mitigating factors (8) and (13) to both convictions. Regarding enhancement factor (7), the defendant asserts that the evidence was insufficient to support a conclusion that his actions were sexually motivated. We disagree. In applying factor (7), the trial court relied on the defendant's crude account of his offensive conduct, finding such account indicated elements of sexual gratification. In addition, the trial court noted the defendant's admissions that he was sexually attracted to children, that he was sexually aroused at the time of the rape, and that after the offense he had fantasized about what he had done to the victim. This evidence clearly supports application of enhancement factor (7) to the defendant's conviction for rape of a child.

The defendant next argues that mitigating factors (8) and (13) apply[3]--both on the basis of his alleged lessened mental capacity. The defendant cites evidence from his psychological evaluation indicating that he has an "inadequately-developed [sic] personality structure," "lack of insight," "limited ability to reflect upon his behavior," limited skills and resources for coping with life, "poor problem-solving abilities," an intelligence quotient of seventy-five, and had a "disordered and failed childhood." The trial court considered this evidence but concluded that the defendant was functioning within a low average range of intelligence and declined to apply mitigating factor (8). However, contrary to the defendant's assertion, the trial court did find mitigating factor (13) applicable

---

[3] "(8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense . . . ;
(13) Any other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-1 13(8), (13).

based on the above cited evidence. [4] We conclude that the defendant has failed to carry his burden of showing that his sentence is improper.

## CONSECUTIVE SERVICE

The trial court ordered that the defendant serve his sentences consecutively to each other and consecutively to a prior sentence for an unrelated offense pursuant to subsections (b)(2) and (b)(5) of Tennessee Code Annotated § 40-35-115. These subsections allow consecutive sentencing upon a finding by the preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive"; or that "[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical, and mental damage to the victim or victims."

The defendant first argues that neither of the above provisions is sufficiently established in the present case. As to subsection (b)(2), the defendant argues that his two prior convictions for attempted sexual battery and aggravated assault do not amount to an extensive criminal history. The record reflects, however, that the trial court based its finding primarily on statements by the defendant indicating that he had committed numerous additional sexual offenses against young children. Although the defendant had not been convicted of these offenses, the statute does not limit a trial court to consideration of criminal convictions. See Tenn. Code Ann. § 40-35-115(a)(2) (referring to "criminal activity"). The defendant's statements were sufficient to support the trial court's conclusion by a preponderance of the evidence.

---

[4] The trial court accorded no weight to this factor.

As to subsection (b)(5), the defendant asserts that at least two of the factors mentioned in § 40-35-115(b)(5) weigh against consecutive sentencing in his case. These factors, he asserts, are "the aggravating circumstances arising from the relationship of the defendant and the victim . . . [and] the time span of the defendant's undetected sexual activity." The defendant does not contest, and the evidence supports, that the remaining factors weigh in favor of consecutive sentencing.

Regarding the factors cited by the defendant, the evidence shows that the defendant was a friend of the victim's father and that the defendant and his wife were babysitting the victim at the time of the offense. The victim's father testified that the incidents had an ongoing effect on his daughter, manifested by nightmares, changes in her attitude, and a drop in her grades. As a result, he stated that the victim was attending counseling. These facts contradict the defendant's assertions that even the above cited factors weigh in his favor. The defendant has failed to carry his burden of demonstrating that his sentence is improper, and we hold that consecutive service is warranted on the basis of either subsection (b)(2) or (b)(5).

Finally, the defendant argues that even if consecutive sentencing is appropriate under the above provisions, such service is nevertheless inappropriate in the present case because the imposed sentences do not "reasonably relate to the severity of the offenses committed and are [not] necessary in order to protect the public from further criminal conduct by the defendant." quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). This argument is not well taken. The evidence abundantly supports that the imposed sentences are reasonably related to the severity of the defendant's crimes and that consecutive sentencing is necessary to protect the public from further criminal acts of the defendant. The defendant has a long history of

sexual predation, and a lengthy term of incarceration is warranted to protect future potential victims.

## CONCLUSION

For the foregoing reasons, the judgment and sentences of the trial court are AFFIRMED.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

_____
JOE G. RILEY, Judge