

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2000

# United States v. Scott

Precedential or Non-Precedential:

Docket 99-5195

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Scott" (2000). *2000 Decisions.* Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 2, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-5195

UNITED STATES OF AMERICA

v.

TIMOTHY SCOTT,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 98-cr-00011)
District Judge: Hon. Stephen M. Orlofsky

Submitted Under Third Circuit LAR 34.1(a)
July 18, 2000

Before: BECKER, Chief Judge, SLOVITER and
NYGAARD, Circuit Judges

(Filed August 2, 2000)

        Richard M. Roberts
        West Orange, New Jersey 07052

         Attorney for Appellant

        Robert J. Cleary
         United States Attorney
        Newark, New Jersey 07102-2535

        Norman Gross
         Assistant United States Attorney
        On the Brief
        Camden, New Jersey 08101-2098

         Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

Timothy Scott, who was found guilty by a jury of being a former felon in possession of a firearm in violation of 18 U.S.C. S 922(g), appeals, complaining of the District Court's denial of his motion to dismiss the indictment, of certain evidentiary rulings, and of the court's allowance of a government witness's redirect examination.

II.

Scott was arrested on April 13, 1997 by New Jersey police officers Eugene Kennedy and Eric Ingold who found him near the scene of a disturbance in possession of a loaded .45 caliber semi-automatic handgun.1 Scott was then taken to the police station for processing, during which he was directed to remove certain articles of clothing. At that time, Scott made several statements to the effect of: "why are you trying to put this on me, I didn't have no gun." App. at 593-94. Indeed, whether Scott had afirearm or ammunition within S 922(g) was the principal contested issue in the case. While Scott was removing his right boot at the police station, a .45 caliber bullet fell to the floor, and in response Scott blurted out "Oh, shit." Thereafter, Scott ceased denying having possessed the weapon. App. at 591-95.

Scott was indicted by a federal grand jury for violation of 18 U.S.C. S 922(g).2 Scott stipulated at trial that he was a

_____

1. We view the evidence in favor of the verdict winner, here the government. See United States v. Davis, 183 F.3d 231, 238 (3d Cir. 1999).
2. 18 U.S.C. S 922(g) provides, in relevant part:

    It shall be unlawful for any person . . . who has been convicted in
    any court of, a crime punishable by imprisonment for a term
    exceeding one year . . . to ship or transport in interstate or
foreign
    commerce, or possess in or affecting commerce, anyfirearm or
    ammunition; or to receive any firearm or ammunition which has
    been shipped or transported in interstate or foreign commerce.

convicted felon and that the weapon and ammunition in question was moved in interstate commerce.

On January 21, 1998, the District Court entered an order requiring the government to make available any relevant written or recorded statements or confessions made by Scott. The government represented in a pre-trial brief filed in June 1998 that it did not possess any such statements made in response to interrogation by law enforcement officers. Shortly before the trial was scheduled to begin, the Assistant U.S. Attorney discovered and disclosed notes of his predecessor regarding the "Oh, shit" remark. Scott filed a motion to suppress the statements he made during processing denying he had been carrying a gun and the "Oh, shit" remark that he made when the bullet fell out of his boot. Scott contended that the delayed disclosure of the post-arrest statements constituted a violation of the discovery order and Fed. R. Crim. P. 16(a)(1)(A). The District Court held a suppression hearing and thereafter denied the motion to suppress but ordered a one week continuance to allow Scott's counsel time to prepare to address the statement.

In the course of trial preparation, Scott secured the transfer from a New York prison of Raymond Smith to testify on his behalf by use of the ex parte procedure provided by Fed. R. Crim. P. 17(b). The Assistant U.S. Attorney, unfamiliar with Rule 17(b) and its process, learned of the presence of Smith, a possible defense witness then being housed at the Camden County Jail, and requested officers Kennedy and Ingold to interview Smith at the jail if he was willing to talk. Smith was and the officers interviewed him. Scott filed a pre-trial motion to dismiss the indictment on the ground that the interview of Smith was a violation of Rule 17(b). The District Court held a hearing after which it denied the motion but precluded the government from using any information obtained in the interview with Smith. Scott's counsel chose not to present Smith as a witness.

The matter proceeded to trial. After the defense rested, Scott moved to have the government's representations as to the absence of any statements made by Scott (which

3

appeared on page 13 of its pre-trial brief) admitted into evidence. This motion was denied.

The jury then returned a guilty verdict on the one count at issue. The District Court sentenced Scott to 120 months imprisonment and 36 months of supervised release. Scott filed a timely appeal.

III.

A.

Scott's motion to dismiss the indictment is premised on his claim of prosecutorial misconduct. We exercise plenary review over a district court's legal rulings in declining to dismiss an indictment, and we review its factualfindings for clear error. See United States v. Nolan-Cooper, 155 F.3d 221, 229 (3d Cir. 1998). Scott contends that the action of the prosecutor in sending officers to interrogate prospective defense witness Smith amounted to misconduct and was prejudicial in that the officers intimidated Smith or otherwise caused him to change his story. Scott contends that Smith would have testified that Scott was not in possession of a gun at the time of his arrest, but that as a result of the interrogation Smith was afraid to give such testimony. Scott argues that the District Court's ruling barring the government from using any information acquired from the interrogation of Smith was not adequate to avert the chilling and prejudicial effect of the interrogation.

Fed. R. Crim. P. 17(b) provides that:

> Defendants Unable to Pay. The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid

in case of a witness subpoenaed in behalf of the government.

It is well established that the purpose of Rule 17(b) "is to `shield the theory of [a] defense from the prosecutor's scrutiny.' " United States v. Brinkman, 739 F.2d 977, 980 (4th Cir. 1984) (quoting United States v. Meriwether, 486 F.2d 498, 506 (5th Cir. 1973)). The Advisory Committee Notes refer to the need for a process by which defendants unable to pay the fees of a witness necessary to an adequate defense may obtain the issuance of a subpoena without disclosing in advance the theory of the defense. See, e.g., Fed. R. Crim. P. 17(b) advisory committee's note to 1966 Amendment. However, even when there has been a Rule 17(b) violation the defendant can obtain relief only upon a showing "that he was prejudiced by the failure to comply with the rule." Meriwether, 486 F.2d at 506.

In the present case, the District Court found that the government did in fact violate Rule 17(b) and thereby learned something about the defense strategy which it would not otherwise have learned. However, the court determined that the appropriate cure for such prejudice was not dismissing the indictment, as Scott sought, but prohibiting the government from using any information acquired by way of that violation.

We need not decide whether the government's action constituted a violation of Rule 17(b) because, in any event, we find no error in the District Court's decision. The court relied on ample authority holding that the dismissal of an indictment for prosecutorial misconduct is an "extreme sanction which should be infrequently utilized." United States v. Pabian, 704 F.2d 1533, 1536 (11th Cir. 1983) (quotation omitted); see also United States v. Holloway, 778 F.2d 653, 655 (11th Cir. 1985); United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978); cf. United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982) (stating that"even in the case of the most `egregious prosecutorial misconduct,' the indictment may be dismissed only `upon a showing of actual prejudice to the accused' ").

The District Court's findings, which Scott does not challenge, make clear that there was no egregious

5

prosecutorial misconduct in this case. Moreover, as the court found, inasmuch as Scott did not call Smith to testify for "tactical" reasons there was no basis tofind that the officers' interrogation of Smith tainted his testimony. App. at 283, 290. These findings, combined with the District Court's order preventing the prosecution from using any information derived from the interview, make clear that Scott was not prejudiced by any violation of Rule 17(b). We therefore reject Scott's contention that the court erred in denying his motion to dismiss the indictment.

B.

Scott's second contention is directed to the District Court's admission of certain evidence, a ruling we generally review under an abuse of discretion standard although we exercise plenary review over the district court's conclusions of law. See United States v. Johnson, 199 F.3d 123, 125 (3d Cir. 1999).

Scott's complaint about the admission of certain post-arrest statements is based on the requirement of Fed. R. Crim. P. 16(a)(1)(A) that upon the defendant's request the government must disclose to the defendant and make available for inspection, copying, or photographing"that portion of any written record containing the substance of any relevant oral statement made by the defendant . . . in response to interrogation by any person then known to the defendant to be a government agent . . . ." The District Court initially ruled that the government had violated Rule 16 and the applicable discovery order by negligently concealing, until a week before trial, the oral statements which Scott made voluntarily while in police custody, and also ruled that Scott was prejudiced thereby. To cure that prejudice, the court granted a continuance affording defense counsel an additional week to prepare for trial.

Neither the "Oh, shit" remark nor the assertions of innocence fall within Rule 16. As the court stated in United States v. Kusek, 844 F.2d 942, 948-49 (2d Cir. 1988), under Rule 16(a)(1)(A) "the government is not required to provide discovery of a defendant's unrecorded, spontaneous oral statements not made in response to interrogation." The

6

District Court here recognized that "the government only has to produce statements which are made in response to interrogation by a person a defendant knows to be a law enforcement officer." App. at 848–49.

The rule is similar elsewhere. For example, in United States v. Cooper, 800 F.2d 412 (4th Cir. 1986), a prisoner who had been convicted of assaulting another inmate argued on appeal that the district court erred in admitting into evidence an incriminating statement he made during the assault. That statement, made in response to a correctional officer's order to stop the assault, was: "Not yet, I'm not finished." Id. at 416. He argued that Rule 16(a)(1)(A) barred use of the statement as evidence because the government did not divulge this statement before trial in response to his request. On appeal, the court held that the statement was properly admitted, noting that"[f]or an oral statement to be within the purview of [the Rule], it must be made in response to interrogation." Id. (quotation omitted); see also United States v. Bailey, 123 F.3d 1381, 1399 (11th Cir. 1997) (stating that "a defendant's voluntary statements made to individuals that the defendant did not know were government agents do not come within the ambit of this rule"); United States v. Hoffman, 794 F.2d 1429, 1432–33 (9th Cir. 1986) (reversing a suppression order where the discovery order exceeded the parameters of Rule 16(a)(1)(A) in that it compelled disclosure of oral statements made by the defendant not in response to interrogation).

Indeed, shortly after its ruling the District Court here recognized that its order went beyond the parameters of Rule 16. On December 7, 1998, in addressing Scott's application to have page 13 of the government's pre-trial brief admitted into evidence, the court stated:"I believe I may have erred in the sense that I held there was a violation of the discovery order since the discovery order in this case goes beyond the language of Rule 16 . . . ." App. at 848.

Because we conclude that the statements in question did not violate Rule 16 as they were not made in response to interrogation, the government had no obligation to disclose them. It follows that the one-week continuance granted by

7

the District Court, albeit unnecessary, was not an abuse of discretion. Furthermore, because Scott sought to admit page 13 of the government's pretrial brief to contradict the government's earlier statement that it was not in possession of any Rule 16(a)(1)(A) material, and we have determined that that response was accurate, we reject Scott's contention that the District Court erred in failing to admit page 13.

C.

Finally, Scott contends that the District Court erred in allowing questioning on redirect examination of Officer Ingold. Scott failed to object to this examination at trial, and therefore can secure relief only if the alleged errors are plain error. See United States v. Thame, 846 F.2d 200, 204 (3d Cir. 1988). We see no error, much less plain error. The redirect examination was directed to matters about which Officer Ingold had testified on cross-examination, and which he sought to explain on redirect examination. This is the classic purpose of redirect examination.

IV.

In light of the above, we will affirm Scott's conviction and sentence.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit