

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2004

# USA v. Barrett

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1239

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Barrett" (2004). *2004 Decisions.* Paper 66.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/66

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-1239
_____

UNITED STATES OF AMERICA

v.

RONALD F. BARRETT,
                          Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 02-cr-00019)
District Judge: Honorable Maurice B. Cohill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
on December 7, 2004

Before: RENDELL, FISHER and YOHN*, Circuit Judges.

(Filed: December 16, 2004)
_____

OPINION OF THE COURT
_____

_____

    * Hon. William H. Yohn, Jr., Senior Judge of the United States District Court for the
    Eastern District of Pennsylvania, sitting by designation.

YOHN, District Judge.

Ronald F. Barrett ("Barrett") appealed his conviction for arson and causing injuries to a public safety officer, after he was sentenced to a term of imprisonment. Our jurisdiction arises under 18 U.S.C. § 1291. For the reasons set out below, we will affirm.

I.

On October 8, 2001, the Hofbrau, a bar in Geistown Borough, Pennsylvania owned by Barrett and his wife, caught fire and sustained severe damage. Barrett was charged in a two-count indictment stemming from his alleged involvement in the fire. Count I of the indictment charged Barrett with maliciously damaging and destroying, by means of fire, a building used in interstate commerce and in activity affecting interstate commerce, in violation of 18 U.S.C. § 844(i). Count II charged that as a direct and proximate cause of that conduct, personal injuries were caused to a public safety officer during the performance of his official duties, also in violation of 18 U.S.C. § 844(i).

As we write solely for the parties, our recitation of the trial proceedings will be limited to those facts necessary to our determination. Before trial in the United States District Court for the Western District of Pennsylvania, Barrett filed a Motion to Exclude Expert Testimony Regarding Alleged Points of Origin and Incendiary Nature of the Fire. This motion sought to exclude the expert testimony of Fire Marshal William M. Ray ("Ray") on the ground that his opinion regarding the alleged points of origin and the incendiary nature of the fire was not based upon scientific principles and methods, but

2

rather on the statements of Douglas Custer ("Custer"), the evening bartender at the Hofbrau, and Linda Reid ("Reid"), the sister of Barrett's friend, both of whom would be testifying at trial as to statements Barrett made to them at or around the time of the fire.

Ray had prepared two reports regarding the fire. The first, dated October 9, 2001, stated that the cause of the fire was "undetermined," and that the point of origin was "unknown." However, Ray did report "three distinct areas of severe fire damage" and "no distinct burn patterns to connect the three areas of burn." In addition, Ray reported that the first floor of the Hofbrau appeared to be the "floor of origin" and that because of "unusual burn patterns," there was a "possibility of an incendiary fire."

Ray's second report, dated January 3, 2002, stated that "due to additional information and elimination of accidental causes the fire was incendiary in nature." This "additional information" came from interviews with Reid and Custer, who told Ray about statements Barrett made at or around the time of the fire. Thus, Barrett argued that to allow the expert testimony would be to invade the province of the jury, because Ray was in no better position than the jury to assess the credibility of Reid and Custer.

The district court deemed Ray's testimony admissible in part, in that it permitted him to testify as to the conclusions in the October 9 report. The court did state, however, that Ray "shouldn't say, as an expert, I'm saying this is an incendiary fire," as he had in his January 3 report.

At trial, Ray testified as to his examination of the Hofbrau after the fire, describing his attempt to find the area of greatest damage, because that is generally the area of origin. Ray testified that his "primary area of focus" became an area inside the building where the fire completely destroyed the door of a storage area. In addition, Ray testified that there was a "low burn" in that area, indicating that some sort of accelerant had been used. Ray also testified that an area near a stairway was "a really good spot of interest," because it was completely burned out. Finally, Ray testified that the stairway area was an "area of origin," basing this opinion on the pattern of the fire movement and the damage that was done there. In short, Ray testified that the "three distinct areas of severe fire damage" that he mentioned in the October 9 report were the fire's three "areas of origin."

Barrett moved to strike Ray's testimony on the ground that it was beyond the notice given to him before trial, in violation of Fed. R. Crim. P. 16. Barrett argued that the October 9 report stated that the "point of origin" was unknown and that there were areas of severe burn, but that it stated nothing about "areas of origin." The district court permitted testimony about "areas of origin," because they differ from "points of origin," but directed counsel to have Ray explain the difference to the jury.[1]

Ray then testified regarding the difference between "points of origin" and "areas of origin." He stated that the fire had three "areas of origin": one in the area of the steps,

---

[1] Ray never testified that the fire was of an incendiary nature or as to any "points of origin."

4

one in the corner of the storage room, and one in the northwest part of the bar. Ray testified that this determination was based on his observation of the charring, fire damage, and burn pattern. These areas were substantially the same as the "areas of severe fire damage" referred to in the October 9 report.

On September 18, 2003, the jury convicted Barrett on both counts of the indictment. On January 7, 2004, Barrett was sentenced to eighty-four months in prison, to be followed by three years of supervised release. The Judgment and Commitment Order was signed on January 8, 2004 and entered on January 13, 2004. The district court also then signed an "Addendum to Judgment of Sentence," which was entered on January 14, in which it added a special condition of supervised release. Barrett filed his appeal on January 22, 2004.

## II.

Barrett's contention on appeal is "directed to the District Court's admission of certain evidence, a ruling we generally review under an abuse of discretion standard although we exercise plenary review over the District Court's conclusions of law." United States v. Scott, 223 F.3d 208, 211 (3d Cir. 2000) (dealing with a Fed. R. Crim. P. 16 issue).

## III.

The sole issue on appeal is Barrett's contention that Fed. R. Crim. P. 16 requires the government to give advance notice of any expert testimony it intends to use at trial,

5

and that although the government did provide appellant with Ray's expert reports, "those reports did not divulge the exact nature of the expert testimony which actually occurred at trial."[2] Barrett asserts that while the reports concluded that the cause, origin, and ignition factor of the fire were all undetermined, Ray was permitted to testify at trial that there were three "areas of origin" for the fire, and that all three were distinct and unrelated. Barrett thus contends that the testimony "violated Rule 16's requirement of advance notice," and that "the violation was not harmless since it completely derailed Mr. Barrett's defense," because had he known of Ray's impending "areas of origin" testimony, Barrett could have pursued a different trial strategy.

Despite Barrett's claim that Ray's "surprise testimony" derailed his defense, the district court did not violate Fed. R. Crim. P. 16 when it concluded that Barrett did have sufficient advance notice of the nature of Ray's testimony, in the form of the October 9 report. As the government states in its brief, "[a]lthough Ray's October 9th report did not

---

[2] The provision, in pertinent part, is as follows:

> **Rule 16. Discovery and Inspection**
>   **(a) Government's Disclosure.**
>     **(1) Information Subject to Disclosure.**
>       **(G) Expert Witnesses.** – At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

6

explicitly state that the fire had three distinct 'areas of origin,' Barrett had more than enough information at the time of the trial from which to draw that conclusion." Ray's testimony regarding "areas of origin" is a logical and reasonable inference from the language contained in the October 9 report about the three distinct areas of severe fire damage that were unconnected to each other. Barrett's argument is largely semantic, especially when one considers that after Ray mentioned these "areas of origin," and defense counsel objected, the district court required Ray to explain to the jury the difference between "areas of origin" and "points of origin," the latter being described as "unknown" in the October 9 report. In short, the district court correctly ruled that this testimony was within the scope of the October 9 report, and that it did not violate Fed. R. Crim. P. 16, because it was substantially the same as the contents of the October 9 report.[3]

## IV.

For the foregoing reasons, we will AFFIRM the district court's judgment and Barrett's conviction.

---

[3] Because we conclude that there was no violation of Fed. R. Crim. P. 16, there is no need to consider the issue of whether any possible violation of that rule was prejudicial to Barrett's substantial rights. See United States v. Lopez, 271 F.3d 472, 483-84 (3d Cir. 2001) (holding that reversal is proper only when a Rule 16 violation results in "prejudice to substantial rights").