**The STATE of Ohio, Appellee,**

v.

**HOLT, Appellant.**

[Cite as *State v. Holt* (1997), 132 Ohio App.3d 601.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960140.

Decided Sept. 12, 1997.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*Michael Paolucci,* for appellant.

PAINTER, Presiding Judge.

We are asked to determine whether a person in custody for a separate offense may be questioned about other criminal conduct, which the police believe he has witnessed, without the necessity of *Miranda* advice. We hold that *Miranda* applies to any person in custody, and it matters not that the police believe that the person in custody is a witness or a suspect. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

## I. Facts

On May 6, 1995, Phillip Haley, fourteen years of age, was shot and killed. At this time, the defendant-appellant, Rayshun Holt, a friend of Haley's, was a runaway from the Hillcrest Juvenile Home, where he was placed for violating a court order relating to a felony drug conviction. Holt was fifteen.

Holt called his sister and told her that he had witnessed the shooting. After seeing a local newscast reporting that an unknown black teenager had been

killed, Holt's stepfather called the police and informed them that Holt had been missing for several days and may have witnessed the shooting.

Two days after the murder, on May 8, the police located Holt and arrested him for violating the court order and for his escape warrant. They first brought Holt to the Criminal Investigation Section ("CIS"), not the juvenile detention center, and questioned him about the murder. Holt was questioned for over three hours in a room used for interviewing witnesses and interrogating suspects. The room was the size of "a walk-in closet." At the time, the officers seemingly believed Holt to be only a witness to the killing; they did not give Holt any *Miranda* warnings. The officers did not lock Holt in the room, but at no time told him that he was free to end the questioning. The officers taped Holt's final statement. Following the questioning, Holt was returned to the juvenile detention center.

During the questioning, Holt first told police that he was walking up Dexter Avenue with Haley when three individuals wearing ski masks walked up behind them. Holt stated that he ran and heard a gunshot. A short time later, police began the interview again. This time, Holt explained that he and Haley were walking on Dexter when a two-door, white Ford Escort pulled up in front of them. Three men—one wearing a ski mask, one wearing a hood pulled up around his face, and one "bare-faced"—exited from the vehicle. The man wearing the ski mask placed the gun to Haley's head and demanded money. Holt said that he then ran and hid behind an apartment building. The police left Holt in the room, consulted, and, because of the discrepancies in his story, decided to record the next interview session. Still, *Miranda* advice was not forthcoming. Holt told a substantially similar story this time, but stated that the man who pointed a gun at Haley was wearing a black "alligator" mask.

On May 20, 1995, the police brought the victim's mother, who knew Holt, to the juvenile detention center to participate in another round of questioning. Holt was brought to a small room for the questioning, during which time the door remained closed. An officer, a representative from the juvenile center, and Haley's mother were present. Again, Holt was not given *Miranda* warnings during the "interview."

On June 19, 1995, after the police talked with additional witnesses, Holt's status suddenly changed from that of a witness to that of a suspect. After reading Holt his *Miranda* warnings, the police attempted to question Holt again about the murder. Holt told police that he did not want to answer any more questions.

Holt was then indicted for murder with a firearm specification. After a bindover hearing, the juvenile court relinquished jurisdiction and Holt was tried as an adult. The trial court denied Holt's motion to suppress the statements Holt made to police before the *Miranda* warnings. The trial court believed that because Holt was not a suspect at the time of the first two interviews, *Miranda*

advice was not necessary. After a jury trial, Holt was convicted of murder with a firearm specification.

Holt asserts three assignments of error. In his first assignment, he contends that the trial court erred in denying his motion to suppress. We agree.[1]

Reviewing a trial court's decision not to suppress evidence, an appellate court defers to the trier of fact on the issues of the credibility of the witnesses and the evaluation of the evidence. See *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. But the application of law to the decision of whether to suppress evidence is reviewed *de novo*. See *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141.

## II. *Miranda*

Prior to questioning, *Miranda* advice must be given to those in custody, even if custody is for an offense unrelated to the offense that is being investigated. Put simply, the requirement of *Miranda* warnings protects a defendant's privilege against self-incrimination and his right to counsel. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. A defendant, of course, may waive these rights if the waiver is made voluntarily, knowingly, and intelligently. *Miranda* warnings are necessary to safeguard against the compelling pressures inherent in police custody that "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719; see, also, *Moran v. Burbine* (1986), 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410.

*Miranda* warnings are necessary only during custodial interrogation. *Illinois v. Perkins* (1990), 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243; *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, certiorari denied (1996), 516 U.S. 1177, 116 S.Ct. 1275, 134 L.Ed.2d 221. But *Miranda* warnings are necessary even if police are questioning a defendant about an offense different from that for which the defendant is in custody. *Mathis v. United States* (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381; *State v. Lawler* (Feb. 21, 1997), Lucas App. No. L–96–223, unreported, 1997 WL 77511.

The state concedes that Holt was in custody for his juvenile warrant during the periods of questioning on May 8 and May 20. However, the state contends that because Holt was only a possible witness—and not a suspect—at the time, *Miranda* warnings were not necessary before questioning him about the homicide. We disagree. The state actually misreads *Miranda* itself, which

---

1. We *sua sponte* remove this case from the accelerated calendar.

defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Whether a person is a suspect or merely a witness goes only to the issue of whether the person is "in custody."

██ The holding in *Mathis* dictates that one in custody may not ever be questioned regarding a separate offense without being advised of the *Miranda* warnings.[2] Holt was in custody for an offense unrelated to the murder. Without doubt, Holt was questioned while in custody in contravention to the dictates of *Mathis.*

██ Thus, since Holt was in custody, the state is left to argue that the police questioning was not "interrogation." Interrogation occurs when the police use words or actions that are reasonably likely to elicit an incriminating response from the defendant. *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297; *State v. Knuckles* (1992), 65 Ohio St.3d 494, 605 N.E.2d 54, certiorari denied (1993), 508 U.S. 981, 113 S.Ct. 2986, 125 L.Ed.2d 682. We hold that when an individual is in custody for an unrelated matter, any form of police questioning about another crime is interrogation and requires the recitation of the *Miranda* warnings—regardless of whether the individual is a suspect or a witness.

The Colorado Supreme Court encountered facts nearly identical to those presented here in *People v. Lee* (Colo.1981), 630 P.2d 583, certiorari denied (1982), 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318. In *Lee,* the court held that the statements taken from the defendant, who had not received *Miranda* warnings, should have been suppressed. The court stated that "[t]he critical inquiry in this case is not whether the police considered the defendant a suspect

---

2. Some courts have distinguished *Mathis* in prison cases where the prisoner has experienced no added imposition on his freedom of movement during the questioning apart from the imprisonment itself. See *Garcia v. Singletary* (C.A.11, 1994), 13 F.3d 1487; *Cervantes v. Walker* (C.A.9, 1978), 589 F.2d 424; *United States v. Cooper* (C.A.4, 1986), 800 F.2d 412; *United States v. Scalf* (C.A.10, 1984), 725 F.2d 1272; *Flittie v. Solem* (C.A.8, 1985), 751 F.2d 967; *State v. Peeples* (1994), 94 Ohio App.3d 34, 640 N.E.2d 208; *State v. Bradley* (Sept. 22, 1987), Scioto App. No. 1583, unreported, 1987 WL 17303; *State v. Swinney* (July 15, 1989), Pickaway App. No. 87 CA 41, unreported, 1989 WL 86260; but, see, *United States v. Cadmus* (S.D.N.Y.1985), 614 F.Supp. 367 (arguing that prisoners are in custody and entitled to *Miranda* warnings whenever questioned about a crime). Neither party has argued this issue or cited these cases on appeal, but they should be mentioned lest their existence cause confusion. These cases involve felons already incarcerated in a penal institution, not in local, pretrial detention. This situation is analogous to "on the scene" investigations, where police are free to question bystanders or other witnesses. The "bystanders" at a prison scene just happen to be in custody. These cases are inapplicable to the case *sub judice,* where the questioning was not comparable to an "on the scene" investigation.

but, rather, whether the defendant, while in police custody, was exposed to a risk of self-incrimination by police interrogation." *Id.* at 589, citing *Marchetti v. United States* (1968), 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and *Rogers v. United States* (1951), 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344.

The analysis in *Lee* is borne out by a more recent decision of the United States Supreme Court, which does not address the identical issue, but supplies guidance for reaching the correct result. The court held that an officer's subjective view of whether an individual is a suspect or a witness is immaterial to what is to be an objective determination of whether the individual is in custody and deserving of *Miranda* warnings. *Stansbury v. California* (1994), 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293. The court stated that "one cannot expect the person under interrogation to probe the officer's innermost thoughts. Save as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry. 'The threat to a citizen's Fifth Amendment rights that *Miranda* was designed to neutralize has little to do with the strength of an interrogating officer's suspicions.'" *Id.* at 324–325, 114 S.Ct. at 1530, 128 L.Ed.2d at 300, quoting *Berkemer v. McCarty* (1984), 468 U.S. 420, 435, 104 S.Ct. 3138, 3147, 82 L.Ed.2d 317, 331, fn. 22.

Although in *Stansbury* the court considered whether an officer's subjective belief concerning an individual's status as witness or suspect affected whether the individual was in custody, it follows that those subjective beliefs are also not pertinent in determining whether a person in custody can be questioned about an offense different from the offense mandating the custody. Whether the police believed him to be a suspect or a witness, Holt was exposed to the same risk of self-incrimination—the risk that *Miranda* warnings serve to protect against.

### III. The "Bright–Line" Rule

We hold that, except for the very limited exception for "on the scene" questioning of incarcerated persons concerning crimes that happen in a jail facility,[3] *Miranda* warnings must be given any time an individual is in custody and questioned about criminal activity. *Miranda* itself mandates this result. See *Miranda,* 384 U.S. at 467–468, 86 S.Ct. at 1624, 16 L.Ed.2d at 719–720. For practical reasons this rule is necessary, as officers could interrogate individuals in custody about a different offense without *Miranda* warnings and later claim that the individual was merely a possible witness and not a suspect. It would prove

---

**3.** See footnote 2.

too difficult to determine if the police truly believed the individual to be only a witness—or to determine at exactly what point the police changed their opinion about whether the individual was a witness or a suspect. Constitutional rights should not rest on such hazy, subjective determinations.

This holding furthers legitimate law enforcement interests. A rule requiring that *Miranda* warnings be administered any time an individual in custody is questioned about criminal activity is simple to follow and not only assures citizens their Fifth Amendment protections but also protects any evidence obtained after *Miranda* advice from later attack, as in the instant case. Officers will not have to determine at what exact point an individual in custody becomes a "suspect." We emphasize that our holding applies solely to persons *already in custody*. This rule protects both law enforcement objectives and the Fifth Amendment, and will avoid problems, not cause more confusion. Neither the police nor the courts will have to speculate as to whether or when *Miranda* warnings must be given to a person in custody.

Holt, in custody for his juvenile warrant, was exposed to the risk of self-incrimination when questioned by the police, who were trying to gather information about the homicide. The prosecution repeatedly used Holt's pre-*Miranda* statements, which were dissimilar to each other, in an attempt to show that he was lying about the events on Dexter Avenue. The discrepancies in the versions of the events that Holt told the officers that he had witnessed were an integral part of the case against him. We agree with *Lee* and emphasize that *Miranda* warnings must be given any time an individual, in custody for any reason, is questioned regarding a crime.

The trial court erred in failing to suppress the statements that Holt made to police without *Miranda* warnings when he was in custody. The first assignment is sustained. Because the use of these statements was a material part of the prosecution's case, we cannot conclude that the trial court's failure to suppress the statements was harmless error. Thus, we must reverse the conviction of murder with the firearm specification and order a new trial.

In his second assignment of error, Holt claims that the trial court improperly failed to grant his motion for a mistrial. This assignment is moot after our grant of a new trial.

### IV. Prosecutor's Duty to Supply Favorable Evidence

In Holt's third assignment, he asserts that the trial court should have granted his motion for disclosure of promises made to prosecuting witnesses in exchange for testimony. This assignment is without merit.

 Prosecutors have a continuing duty to supply the defense with evidence that is favorable to the accused. DR 7–103(B). Crim.R. 16(B)(1)(f) mandates the prosecution's disclosure, upon motion of the accused, of any evidence known to the prosecution that is favorable to the accused and material to a determination of his guilt of the offenses charged. The United States Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218.

 The prosecutor in this case had a duty not only to disclose any promises made to a witness but also to find out if any promises had been made. The trial judge denied the motion but instructed the prosecutor to divulge any information concerning whether promises were made to the prosecution witnesses. From the record, it is evident that the trial judge denied the motion only because he, the defense attorney, and the prosecutor all understood that the prosecution had the continuing duty to supply favorable evidence to the accused. The prosecutor claimed to have no knowledge concerning any promises. The record does not reflect that the prosecuting witnesses were offered any promises for their testimony, and the defense did not further pursue the issue. While we again emphasize that the prosecutor has an affirmative duty to determine whether any promises have been made, and cannot claim "personal ignorance" on the subject, the record simply does not demonstrate any breach of that duty in this case. The third assignment is overruled.

Our decision to sustain the first assignment of error necessitates a reversal of Holt's conviction of murder. This cause is remanded to the trial court for a new trial, in which the statements made by Holt to the police during the custodial interrogations on May 8 and May 20 shall be suppressed.

*Judgment reversed*
*and cause remanded.*

MARIANNA BROWN BETTMAN and SUNDERMANN, JJ., concur.