[Cite as *State v. Gibson*, 2017-Ohio-1266.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                              )
                                            )
    PLAINTIFF-APPELLEE,                     )
                                            )    CASE NO. 16 NO 0431
V.                                          )
                                            )    OPINION
CHRISTOPHER L. GIBSON, JR.,                 )
                                            )
    DEFENDANT-APPELLANT.                    )

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Court of Common
    Pleas of Nobel County, Ohio
    Case No: 215-2030

JUDGMENT:    Affirmed

APPEARANCES:
For Plaintiff-Appellee    Kelly A. Riddle
    Prosecutor
    150 Courthouse
    Caldwell, Ohio 43724

For Defendant-Appellant    Attorney Chandra L. Ontko
    665 Southgate Parkway
    Cambridge, Ohio 43725

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: March 31, 2017

DONOFRIO, J.

{¶1}   Defendant-appellant, Christopher Gibson, appeals from a Noble County Common Pleas Court judgment convicting him of illegal conveyance of prohibited items onto the grounds of a detention facility following a jury trial.

{¶2}   On February 25, 2015, Deputy Paul Channel transported appellant to the Noble County Jail. Deputy Channel testified that he took appellant to the shower room, collected his street clothes, advised him to shower, and then left the room. Deputy Channel also said he did a head-to-toe search of appellant. However that search would not have revealed whether or not something had been ingested, Deputy Channel admitted.

{¶3}   Jail personnel assigned appellant to the 16-person dorm known as "DO-3". The dorm consists of a large open room with 16 bunks, 2 showers with curtains, and 2 partially walled-off toilet areas. Two other inmates besides appellant also occupied that dorm.

{¶4}   The day after appellant was booked, on February 26, Corrections Officer Zane Love conducted a walk-through of DO-3. Upon entering the dorm, Officer Love said he immediately smelled marijuana. Officer Love asked the inmates who had the marijuana, but none of them admitted to it. So Officer Love requested backup and searched the dorm. Nothing was found.

{¶5}   Upon later being questioned by Detective Captain Robert Pickenpaugh, appellant purportedly admitted that, during the February 26 search, he had hidden the marijuana-filled balloon in his hand, swallowed it, and would later pass it.

{¶6}   Two days later, on February 28, Officer Love became aware that there might be drugs in the jail. So, along with backup, he again searched DO-3. This time, next to appellant's bed, Officer Love discovered a jail-issued cup with a lid on it. According to the officer, appellant said it was his spit cup. When Officer Love opened the lid, he could see the cup was filled with toilet paper. Unraveling the toilet paper, the officer found two balloons that smelled strongly of marijuana.

{¶7}   Officer Love asked appellant where the drugs had come from. According to the officer, appellant replied, "They're mine." The officer followed up,

asking "Where did the drugs come from? Were they inside you when you came into the jail?" To which appellant purportedly answered, "Yes, they're mine for my own personal use."

{¶8} Later that same day, during the course of the investigation, appellant and another inmate reported that they had found the marijuana in an electrical socket in the dorm. Officer Love described this as a "concerted" explanation, recounting that some time had passed after the marijuana was discovered and before appellant was locked down. Officer Love reviewed the surveillance video that showed the electrical outlet in question, and he testified that he saw no one access that socket. The video was not made part of the record.

{¶9} During the February 28 investigation, officers also found a pen with suspected drug residue on it. The pen was found on an inmate named Littleton, who shared a "bunk or cell" with appellant. The record did not disclose what exactly the suspected drug residue was.

{¶10} Next, Corrections Officer Ron Saling arrived to photograph the evidence, i.e., the balloons. And another officer later transported the evidence to the Bureau of Criminal Identification and Investigation ("BCI"), where test results showed that the substance in the balloons was indeed marijuana.

{¶11} Two days later, on March 2, Detective Pickenpaugh interviewed appellant, after having him sign a waiver-of-rights form. According to Detective Pickenpaugh, appellant initially denied everything. Then the detective told appellant that he could send the balloons away for DNA testing, and it would probably come back as a match. That apparently prompted appellant to give the detective a more detailed explanation — i.e., (1) that he was attempting to purchase the marijuana from another inmate, Joe Hess, by having his wife put money on Hess' books; and (2) that he had had the balloon in his hand when Officer Love walked into the dorm on February 26, at which time he swallowed it, and it passed through his body.

{¶12} Detective Pickenpaugh also interviewed Hess. Hess had apparently arrived at the dorm two days after appellant, on February 27. According to Detective

Pickenpaugh, appellant's account and Hess' account were not consistent. Hess did not testify in this action.

**{¶13}** On April 29, 2015, the grand jury indicted appellant on one count of illegal conveyance of prohibited items onto the grounds of a detention facility, a violation of R.C. 2921.36(A)(2), a felony of the third degree. Appellant pleaded not guilty, and the case went to trial before a jury on March 22, 2016. The jury returned a guilty verdict. On May 12, 2016, the trial court sentenced appellant to 30 months of incarceration and ordered him to pay costs. Appellant timely filed a notice of appeal on May 17, 2016.

**{¶14}** Appellant raises three assignments of error.

**{¶15}** Appellant's first assignment of error states:

THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶16}** Appellant argues that his conviction was against the manifest weight of the evidence. He first points out that, although Officer Love testified that appellant admitted that the marijuana was his, Officer Love did not record that statement or read appellant his rights. Appellant then concludes that "there is no indication or evidence" that appellant actually told the officer the drugs were his and that he brought them into the jail.

**{¶17}** Next appellant highlights the testimony of Deputy Channel, who booked appellant into the jail. Appellant emphasizes the fact that Deputy Channel had appellant in his control and had the responsibility to ensure appellant did not break the rules. Appellant adds that Deputy Channel did not notice appellant doing anything. In addition, appellant noted the fact that Deputy Channel could not recall whether he had frisked appellant before or after he entered the jail.

**{¶18}** Appellant then takes issue with the testimony of Officer Saling, who photographed the balloons. Appellant, in making his manifest weight argument, relies on the fact that Officer Saling did not know where the balloons came from, did not

open them, and did not know what was inside.

**{¶19}** With respect to the marijuana that was found, appellant argues that officials never found the drugs on his person. Moreover appellant points out that, although the marijuana was found in a cup near his bunk, the surveillance video supposedly did not show appellant doing anything with the cup. Appellant then notes that a pen with powder residue was found in a different inmate's pocket, appearing to cast blame on that inmate instead.

**{¶20}** Lastly appellant argues that the state failed to show the full chain of custody of the marijuana. Appellant notes that Detective Pickenpaugh was not sure who transported the evidence to BCI, having testified that he believed it was Sergeant Pointer. Appellant also attacks the chain of custody by noting that the state's last witness, Elizabeth Wolford, from BCI, testified that she had nothing to do with transporting the evidence.

**{¶21}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* at 387. (Emphasis sic). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390 (Cook, J. concurring).

**{¶22}** Granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of facts who sits in the best position to judge the weight of the evidence and the witness'

credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶23} The jury found appellant guilty of illegal conveyance, a violation of R.C. 2921.36(A), which forbids any person from (1) knowingly (2) conveying or attempting to convey (3) a drug of abuse (4) onto the grounds of a detention facility. Appellant has challenged the verdict as being against the manifest weight of the evidence. To determine that issue, we must first review the record from the trial court.

{¶24} The record shows that appellant traveled to the Noble County Jail. (Tr. 87). Once there, Deputy Channel searched appellant; however that search was not invasive enough to reveal whether or not appellant had ingested contraband with the intent of passing it. (Tr. 88–89). After appellant was housed inside the detention center, Officer Love said that he smelled marijuana in appellant's dorm and conducted a search. (Tr. 103–104). Appellant purportedly admitted to Detective Pickenpaugh that he swallowed the marijuana-filled balloon during this search and then passed the contraband. (Tr. 148). Later Officer Love found two balloons containing marijuana, wrapped in toilet paper, inside a "spit cup" belonging to appellant and next to appellant's bed. (Tr. 107, 121, 169). Officer Love questioned appellant. (Tr. 108). And by answering Officer Love's questions ("Where did the drugs come from? Were they inside you when you came into the jail?") in the affirmative, appellant effectively admitted to having marijuana inside of him when he came to the jail. (Tr. 108). One may reasonably infer from this evidence in the record that appellant conveyed a drug of abuse onto the grounds of a detention facility.

{¶25} Notably, the explanations that appellant gave evolved over time. At first appellant said he found the marijuana and flushed it down the toilet. (Tr. 106). Later,

appellant said he had found the drugs inside of a light socket. (Tr. 109). And then, when interviewed by Detective Pickenpaugh, appellant eventually said that he was attempting to purchase the marijuana from another inmate, Hess, by having his wife put money on Hess' books. (Tr. 147–148, 155). In addition, appellant revised his explanation when he gave it to Detective Pickenpaugh, admitting he had the balloon in his hand when Officer Love walked into the dorm the first time, at which time he swallowed it and later passed it through his body. (Tr. 148).

**{¶26}** Notably appellant's account that he was trying to purchase drugs from Hess seems to conflict with other facts in the record. (Tr. 147–148, 155). For context, appellant arrived at the jail on February 25. (Tr. 87). Officer Love searched the dorm on February 26. (Tr. 103–104). Appellant told the detective that during that search, he concealed the balloon in his hand and swallowed it. (Tr. 148). But appellant also told the detective that he was attempting to purchase the drugs from Hess. (Tr. 148, 155). Appellant's narrative notwithstanding, according to Officer Love, prison officials did not transfer Hess to appellant's dorm until February 27. (Tr. 117). Thus Hess ostensibly would not have been able to supply appellant with the drugs, as appellant's story implies, on February 26.

**{¶27}** Nevertheless, it was the province of the jury to decide what evidence or explanation they believed.

**{¶28}** Appellant also makes arguments regarding the less-than-thorough search conducted by Deputy Channel and the photographs of balloons taken by Officer Saling, who was not personally aware of the contraband contained within. (Tr. 88–89, 142–143). Both of those arguments go to the weight of the evidence as well.

**{¶29}** Moreover appellant argues that the drugs were not found on his person and that the video does not show him handling the cup that contained the marijuana. (Tr. 107–108, 121–122). These go to the weight of the evidence too. And they must be weighed against the fact that appellant admitted that the cup was his "spit cup" and the fact that the cameras do not cover the entirety of the dorm. (Tr. 107, 131–

132).

**{¶30}** Appellant points out that officers found a pen with a powder residue on another inmate during the search. (Tr. 121). Appellant appears to imply that that inmate was to blame for the marijuana as well. However, the record does not show what that powder was. Nonetheless, that was something for the jury to weigh.

**{¶31}** Lastly appellant highlights the fact that appellee failed to show the full chain of custody for the marijuana. (Tr. 149–151, 160–163, 171). However, appellee did not have to show the full chain of custody. Appellee's burden only required that it show to a reasonable certainty that substitutions, alterations, or tampering did not occur. *In re Lemons*, 77 Ohio App.3d 691, 693, 603 N.E.2d 315 (8th Dist.1991). Any breaks in the chain of custody went to the weight of the evidence, not its admissibility. *State v. Howell*, 7th Dist. No. 10-MA-148, 2012-Ohio-4349, ¶ 79.

**{¶32}** Here, Officer Love testified that he believes he bagged and marked the contraband in this case. (Tr. 136). Det. Pickenpaugh explained how their process goes from there. In particular, Det. Pickenpaugh testified that officers will place evidence in a pre-evidence locker that has a key. (Tr. 149). The officer will then give notice to Detective Pickenpaugh, and he will prepare the paperwork to have the evidence analyzed, he said. (Tr. 149). And then, every Tuesday an officer transports evidence to BCI; in this instance, Sergeant Pointer transported the evidence to the Cambridge BCI, according to Det. Pickenpaugh's recollection. (Tr. 149). Elizabeth Wolford, who works for BCI, explained that once evidence has been dropped off, it's received by the evidence receiving team, who codes it and places it in a sealed container to await analysis. (Tr. 165–166). The evidence goes into scientist custody during analysis, and then it is returned to the evidence receiving team, who returns it to the original agency, Wolford said. (Tr. 166).

**{¶33}** The state's burden was to show—to a reasonable certainty—that substitutions, alterations, or tampering did not occur. The state met that burden by presenting the following evidence: the use of a lockable pre-evidence locker; the maintenance of the jail's paperwork system; the regularly scheduled transports; and

BCI's use of codes. In addition, Det. Pickenpaugh testified there was no reason to believe that the evidence was tampered with. Having reviewed the evidence, we conclude the record shows that the state met its burden in terms of showing—to a reasonable certainty—that substitutions, alterations, or tampering did not occur (Tr. 163).

**{¶34}** The evidence in the record supports the jury's verdict. Officers found what turned out to be contraband inside a cup that appellant admitted was his. (Tr. 107, 121, 169). And then appellant admitted that he transported the contraband into the facility. (Tr. 108). In light of the evidence in support of the verdict, appellant's arguments regarding the weight of the evidence fail to establish that a miscarriage of justice has occurred.

**{¶35}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶36}** Appellant's second assignment of error states:

THE APPELLANT ALLEGES HE WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

**{¶37}** Here appellant argues that defense counsel failed to effectively assist him. Appellant claims that defense counsel was ineffective because he failed to subpoena Hess, the "key" witness who would have provided exculpatory evidence, according to appellant.

**{¶38}** Appellant next claims that no statements or incident reports from corrections officers were introduced into the record, overlooking Defendant's Exhibit A, which was the report of Officer Love. Appellant further takes issue with the fact that counsel did not introduce Detective Pickenpaugh's interview summaries into the record.

**{¶39}** Appellant's last ineffectiveness claim concerns motions that appellant says he requested counsel file including "a motion for a bill of particulars, a motion to change venue, a motion for a fast and speedy trial, a subpoena duces tecum [sic] of

witnesses, and other motions." Appellant contends that these motions may have helped him in this matter and that he could have been found not guilty had counsel been effective.

**{¶40}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-pronged test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *State v. Bradley*, 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373 (1989). Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he was prejudiced by counsel's performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley.*

**{¶41}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶42}** Appellant's claim that trial counsel was ineffective because he did not call Hess as a witness is not supported by the record. The mere failure to call a witness does not render counsel's assistance ineffective absent a showing of prejudice. *State v. Brown*, 7th Dist. No. 12-MA-118, 2015-Ohio-793, ¶ 8, citing *State v. Hector*, 2d Dist. No. 18653, 2002-Ohio-1200. And the record in this case does not show how counsel's decision not to call Hess prejudiced appellant. For instance, appellant apparently claimed that Hess was selling the drugs to him. (Tr. 147–148, 155). However, the testimony at trial showed that the drugs were in appellant's possession when Officer Love first did his walkthrough, which was one day before Hess arrived in appellant's dorm. (Tr. 103–104, 117, 148). In addition, Detective Pickenpaugh testified that the explanations from appellant and Hess were not consistent. (Tr. 151). Thus, appellant has not demonstrated how trial counsel's choice not to call Hess prejudiced him.

**{¶43}** The same is true for appellant's other claims that counsel was

ineffective. Appellant argues that trial counsel was ineffective for failing to introduce statements or incident reports into the record (Defendant's Exhibit A notwithstanding). (Tr. 128–129, 185–186). And appellant argues that trial counsel was ineffective for not filing a number of motions. However, appellant has not demonstrated how the result at trial would have been different had counsel introduced the statements or reports or had counsel filed those motions. Without a showing of prejudice, this court cannot find that counsel was ineffective. Therefore, appellant's second assignment of error is without merit and is overruled.

{¶44} Appellant's third and final assignment of error states:

THE APPELLANT ALLEGES HE WAS DENIED A FAIR TRIAL BY THE CUMULATIVE EFFECT OF THE NUMEROUS ERRORS IN THIS TRIAL.

{¶45} Appellant argues that the cumulative effect of the errors in his case denied him a fair trial.

{¶46} Appellant asserts that the delays caused memories of witnesses to fade, caused some witnesses to be inaccessible, and certain evidence to not be presented. Appellant does not give specific examples of which witnesses became inaccessible or which evidence was not presented because of delays. Regarding faded memories, appellant points to the difficulty that Deputy Channel had in recalling the circumstances of when he searched appellant before entering the jail. Appellant concludes that the delays prejudiced him.

{¶47} Appellant next argues that he was prejudiced because he is African American and the witnesses and jurors were all Caucasian. Appellant does not support this assertion with any reference to the record.

{¶48} Appellant finally reiterates that the confession that he apparently gave to Officer Love was not recorded or prefaced with a waiver of *Miranda* rights.

{¶49} An appellate court has the power to reverse a defendant's conviction based on the doctrine of cumulative error. Cumulative error occurs when errors

deemed separately harmless cumulatively deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

**{¶50}** With respect to any delays, a defendant may waive his or her constitutional and statutory rights to a speedy trial. *State v. King*, 70 Ohio St.3d 158, 1994-Ohio-412, 637 N.E.2d 903, paragraph one of the syllabus. In addition, motions filed by the defendant may extend the time as well. R.C. 2945.72(E). That is what happened here.

**{¶51}** The grand jury indicted appellant on April 29, 2015. Appellant filed a not guilty plea and a time waiver on June 1, 2015. He filed a demand for discovery on May 22, 2015, a motion to preserve evidence on June 11, 2015, a motion to dismiss on October 13, 2015, and a motion *in limine* on October 13, 2015. Then appellant filed another time waiver on December 16, 2015. Under the circumstances in this case, appellant having filed pretrial motions and having waived his right to a speedy trial, he cannot now maintain that delays in starting the trial were error.

**{¶52}** Appellant makes an argument that he was prejudiced on account of race. However, an appellate court may only consider what is in the record. *See* App.R. 9(A); *State v. Ishmail*, 54 Ohio St.2d 402, 405–406, 377 N.E.2d 500 (1978). In this case, no objection was made with respect to racial prejudice. And the record does not reflect any racial bias such that it may be considered plain error. Accordingly appellant's claim of bias is not supported.

**{¶53}** Finally, appellant's argument that the trial court erred regarding the non-*Mirandized* confession also lacks merit. Appellant specifically argues the court erred in admitting his alleged confession to Officer Love because appellant was not first read his *Miranda* rights. (Tr. 122–124). However, appellant's analysis is incorrect.

**{¶54}** Courts have created a narrow exception to *Miranda* for "on-the-scene" investigations such as the one that occurred in this case. *See State v. Porter*, 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 16 (2d Dist.).

**{¶55}** In the limited circumstance in which there is on-the-scene questioning

of an inmate about a crime the inmate is suspected of having committed while in a jail or prison facility, officers need not give *Miranda* warnings prior to an interrogation. *Porter* at ¶ 16 citing *State v. Holt*, 132 Ohio App.3d 601, 607, 725 N.E.2d 1155 (1st Dist.1997); *State v. Schultz*, 8th Dist. No. 46043, 1983 WL 4749, *1 (Sept. 22, 1983). Here, Officer Love's questioning of appellant was regarding a crime that appellant was suspected to have committed while in the jail. (Tr. 107–108). Consequently, the on-the-scene questioning falls into the narrow exception to *Miranda*, and thus did not require prior warnings. Meanwhile, the fact that Officer Love did not record the statement goes to the weight of the evidence.

**{¶56}** Accordingly, appellant's argument that the cumulative effect of alleged errors in his case denied him a fair trial is unfounded.

**{¶57}** Thus, appellant's third assignment of is without merit and is overruled.

**{¶58}** For the foregoing reasons, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.